UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

Civil No. 16-CV-_____

| | |
|---|---|
| PERSEPHONE BENNETT, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| BERWICK ACADEMY, | ) |
| | ) |
| Defendant | ) |

**COMPLAINT**

Plaintiff Persephone Bennett complains against Berwick Academy, as follows:

**PARTIES**

1. Plaintiff Persephone Bennett is a resident of Rollinsford, New Hampshire. She was a student at Berwick Academy from September 2001, the start of her kindergarten year, until June 30, 2013, when Berwick Academy dismissed her at the end of her eleventh grade year. She is currently a college student at the Rhode Island School of Design in Providence.

2. Berwick Academy ("Berwick") is a private co-educational day school that provides elementary and secondary education to approximately 600 students. Its campus is located in South Berwick, Maine. Berwick serves day students from surrounding communities in southwestern Maine and seacoast New Hampshire.

**JURISDICTION**

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1332.

4.  Plaintiff filed a charge of discrimination against Berwick Academy with the Maine Human Rights Commission dated January 31, 2014. On December 3, 2015, the Commission dismissed her charge pursuant to 5 M.R.S. § 4612.

## FACTS COMMON TO ALL COUNTS

5.  Plaintiff's parents enrolled her at Berwick in 2001 as a five-year old kindergarten student. She continued attending Berwick every school year thereafter through eleventh grade.

6.  Plaintiff and her parents anticipated and intended that she would complete high school at Berwick, graduating with Berwick Academy diploma.

7.  Plaintiff was an excellent student. She earned good grades and participated in all aspects of the school community.

8.  Prior to the events referenced below, Berwick never alleged that Plaintiff had committed any disciplinary violations at Berwick. She was a highly engaged, well-behaved, thoughtful, and successful student.

9.  As a talented artist with a strong interest in fashion, Plaintiff distinguished herself from other high-achieving Berwick students with her creative work.

10. In January 2012, when Plaintiff was in tenth grade, her father was diagnosed with terminal cancer.

11. Plaintiff's parents made Berwick aware of this diagnosis. Plaintiff was referred to speak with Berwick's counselor, Kimberly Kryder.

12. At the start of eleventh grade year (2012-2013), a new female student ("Classmate") entered Berwick as Plaintiff's classmate and began dating one of Plaintiff's male friends. Classmate flaunted the relationship and taunted Plaintiff about it.

13. In or about October of 2012, Plaintiff asked her mother to intervene when a Berwick English teacher was rude to her in the classroom. Previously, this teacher had been reprimanded for loudly and publicly discussing Plaintiff's father's diagnosis in a school hallway. That incident had caused Plaintiff to break down in tears in the hall.

14. In response to Plaintiff's and her mother's requests, Berwick Academy decided to have the offending teacher co-teach Plaintiff's English class with another teacher. During discussions about how to resolve this issue, Berwick's Assistant Head of School, Cynthia Briggs, pointed out to Plaintiff's parents that placing the co-teacher in the English classroom came at a great expense to Berwick.

15. After Plaintiff reported the incident with the English teacher to the Berwick administration, she was ostracized in class and treated poorly by other students.

16. Plaintiff became very depressed. Ms. Kryder notified Plaintiff's mother that Plaintiff was beginning to show signs of deeper depression.

17. Plaintiff began off-campus counseling with Elizabeth Marcotte, LCSW ("Marcotte").

18. Throughout this period of time, Classmate continued to taunt and harass Plaintiff, causing Plaintiff to become more depressed.

19. Plaintiff's worsening depression caused her to attempt suicide in November 2012.

20. Following her suicide attempt, Plaintiff was treated at Hampstead Psychiatric Hospital in Hampstead, NH, where she remained hospitalized for eight days.

21. Hampstead Hospital diagnosed Plaintiff with Major Depressive Disorder.

22.     Immediately after she was released from the hospital, Plaintiff and her parents met with Berwick administrators to make Berwick aware of her hospitalization and mental health diagnosis.

23.     Upon Plaintiff's return to school after her hospitalization, Berwick removed her from the co-taught English class and placed her with a new teacher, explaining to Plaintiff that her suicide attempt had "changed everything."

24.     Although Plaintiff told Berwick that she did not want to change her schedule, Berwick's Assistant Head of School, Cynthia Briggs, told her she had no choice. Briggs suggested to Plaintiff and her parents that, if they were dissatisfied, they should remove Plaintiff from Berwick and place her elsewhere.

25.     The reaction of Berwick's administrators to her psychiatric hospitalization made it clear to Plaintiff that she was not wanted back at school following her discharge.

26.     In December 2012, after Plaintiff returned to school, Classmate, the female peer who had been harassing Plaintiff, claimed, in front of a large group of students, to have "no hard feelings" toward Plaintiff. Classmate stated that they were still "friends," even though they had never been friends at any point. Classmate then forced Plaintiff to hug her in view of the group of students, which caused Plaintiff to have a panic attack.

27.     The following Monday, Plaintiff informed Ms. Kryder, the school counselor, about this incident and her panic attack. Kryder advised Plaintiff to be firm and empowered Plaintiff to tell Classmate that they were not friends.

28.     Plaintiff maintained what she believed to be a password-protected blog to post entries online. In or about November 2012, she had posted a blog entry venting her feelings

4

toward Classmate. She provided access to the blog to some of her friends, one of whom contacted Ms. Kryder about its content.

29. When Ms. Kryder asked Plaintiff to remove the blog entry, Plaintiff complied with the request immediately.

30. In January 2013, when school resumed following the winter holiday break, Ms. Kryder went out on maternity leave. Berwick replaced her with a part-time counselor, who did not provide Plaintiff with effective counseling services.

31. Berwick eventually had the replacement counselor work a full-time schedule, but both Head of School Gregory Schneider and Assistant Head of School Briggs complained to Plaintiff's parents about the cost to Berwick of having to take this step. They attributed this extra cost to Plaintiff's need for mental health support.

32. In January 2013, Plaintiff again vented on her blog, without naming Classmate. One of her friends alerted Berwick's administration about the new blog post.

33. Berwick administrators responded to the new blog post by requiring Plaintiff to remain at home until a mental health professional could certify that she did not pose a threat to herself or others. This action by Berwick further ostracized Plaintiff.

34. In the wake of this incident, Berwick administrators increased their pressure on Plaintiff's parents to withdraw her from the school and place her elsewhere. Assistant Head of School Briggs told Plaintiff's mother to consider sending Plaintiff to another school for her senior year.

35. Briggs also told Marcotte, Plaintiff's off-campus counselor, that Plaintiff was "way too fragile" and needed to "go to Sweetser school." Sweetser is a day treatment facility in Saco, Maine that provides services to students for serious emotional and behavioral disorders.

36. On February 28, 2013, Berwick wrote a letter to Plaintiff (the "Probation Letter"), which placed Plaintiff on probation (referred to as a "disciplinary warning") through December 2013, claiming that her January 2013 post had violated its cyber-bullying policy.

37. In the Probation Letter, Head of School Greg Schneider stated that he had decided to implement the disciplinary warning without asking Plaintiff to proceed through an Honor Committee process.

38. In the Probation Letter, Berwick required that Plaintiff "continue to be monitored by a mental health professional outside of school" as a condition of her return to school.

39. The Probation Letter also asked Plaintiff's mother to "consider whether or not Berwick would be a match for [Plaintiff's] senior year," warning that "[w]e are not going to be in a position to manage class lists and which particular students will be in [her] classes moving forward. To the extent that you have any expectations of any accommodations for next year, we should have that conversation directly before your enrollment contract becomes fully binding on June 1, 2013."

40. Based on the probation letter and other communications during February 2013, it became painfully clear to Plaintiff that Berwick did not want her to return for her senior year because of her disability.

41. Berwick never investigated the behavior of Classmate, the peer whose behavior toward Plaintiff had prompted Plaintiff to compose her posts, nor did Berwick instruct Classmate to cease her antagonizing behaviors.

42. Throughout the period from February through May 2013, Classmate continued her negative and antagonizing behaviors toward Plaintiff.

43. On at least one occasion, Plaintiff left a school event in tears due to Classmate's harassing conduct. On another occasion, Plaintiff left a school event and walked from campus to South Berwick in an attempt to avoid Classmate.

44. On June 6, 2013, the last day of final exams, a friend alerted Plaintiff that Classmate, although uninvited, had arranged to attend a pre-prom event at the home of one of Plaintiff's friends.

45. When Plaintiff learned that Classmate would be attending the pre-prom party, she experienced panic-like feelings. She decided to use the tools that Ms. Kryder had given her in counseling by being assertive in letting Classmate know how she felt.

46. On or about June 6, 2013, Plaintiff drafted and sent a private message to Classmate through Facebook, as this was the only means she had of communicating with her. The message stated, in its entirety:

> [Classmate].
> [Student A] told me that you will be at [Student B's] [pre-prom party]. I'm going to ask that you not. Seeing you is always a reminder of the night I attempted suicide, and I really don't think I can conduct myself in a way that will be beneficial to either of us. If you insist on coming, don't talk to me, don't look at me, don't even be in the same general area as me, and don't pretend under any circumstances that we are on friendly terms. This is about as polite as I can force myself to be towards you, so I'll just stop before I say something regrettable.
> - Persephone.

The message did not threaten or harass Classmate in any way.

47. Plaintiff attended the pre-prom party. Classmate ignored the message, attended the party, and continued to antagonize Plaintiff.

48. On June 7, 2013, Berwick's Dean Smith contacted Plaintiff's mother about the private message, alleging that it constituted harassment. Plaintiff explained that the message was

7

part of a therapeutic technique she had learned from her school counselor and was merely a statement of her feelings coupled with a request for Classmate to keep her distance.

49. Dean Smith responded by commencing a Berwick Honor Committee investigation of Plaintiff for alleged harassment of Classmate.

50. Dean Smith told Plaintiff that her January blog post would not be presented to the Honor Committee, as that issue had been settled and the June message "appeared to be a different sort of behavior."

51. Ms. Marcotte strongly disagreed with Berwick's assessment of the June message. She wrote a letter expressing that Plaintiff "had suffered through emotional bullying" at school of a type "designed to get others to ostracize the person being bullied." She further explained that Plaintiff had "been constrained" from conveying her feelings due to her unwillingness "to appear rude," and instead had utilized responses that included avoiding and ignoring Classmate, writing down her feelings, and seeking support from friends and adults.

52. Ms. Marcotte also described how Plaintiff had suffered "anxiety attacks manifesting in difficulty breathing and tears" in response to Classmate's behavior, and explained that the June message was a healthy attempt by Plaintiff to state her feelings and expectations of how she wanted to be treated. Marcotte recommended that "setting boundaries on both sides to this relationship" and allowing Plaintiff "to finish her education at Berwick Academy would be the best course of action."

53. On June 10, 2013, the Berwick administration breached its promise to Plaintiff and submitted her January private blog post for consideration by the Honor Committee.

54. The following day, Dean Smith and Head of School Schneider again recommended to Plaintiff's mother that she consider the option of withdrawing Plaintiff from Berwick before the Honor Committee took any action against her.

55. Plaintiff was about to enter her final year of school after having been at Berwick for her entire academic career. Her plans for senior year included leading Berwick's Model United Nations program, serving as captain on the school's basketball team, participating on the school's varsity dance team, and producing an AP art portfolio. She did not wish to withdraw.

56. The Honor Committee met on June 19, 2013, with Assistant Head of School Cynthia Briggs and Dean Smith present. The Committee consisted of three students and three teachers, at least half of which had conflicts of interest that should have resulted in them recusing themselves from considering Plaintiff's case.

57. The Committee voted to expel Plaintiff from Berwick. Head of School Schneider upheld this decision on appeal on July 3, 2013.

58. Berwick's disciplinary data indicates that its Honor Committee has not recommended expulsion of any student other than Plaintiff over the course of 49 other alleged violations it has considered from July 1, 2011 through July 1, 2015. Despite hearing cases involving social media violations related to offensive sexual content, harassment, racist remarks, and disrespect for faculty members during that period, the Honor Committee has confined its recommended penalties primarily to short-term suspensions from school in all cases other than Plaintiff's.

59. Plaintiff's expulsion amounted to discrimination against her on the basis of her mental health disability and also breached Berwick's disciplinary policies and related provisions that were incorporated in Plaintiff's enrollment agreement with Berwick.

9

60. Berwick's actions resulted in Plaintiff suffering an increase in her anxiety, depression, and suicidal thoughts; frequent sleep disturbance and panic attacks; and the loss of long-term friendships with peers and teachers at Berwick. Documentation of the expulsion now appears permanently on Plaintiff's high school transcript.

## COUNT I
### (Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*)

61. Plaintiff repeats the allegations contained in paragraphs 1 through 60.

62. Plaintiff is a person with a disability within the meaning of Americans with Disabilities Act ("ADA") due to her diagnosis with Major Depressive Disorder, which affected one or more of her major life activities.

63. In addition, Berwick regarded Plaintiff as having a disability following her psychiatric hospitalization in 2012.

64. Plaintiff was otherwise qualified to attend high school at Berwick Academy, having successfully completed each grade there since kindergarten. Until the events giving rise to this action, Plaintiff had no disciplinary violations and was generally regarded as an excellent student and cooperative school citizen.

65. Berwick operates a place of public accommodation. As a private school offering elementary and secondary educational services, Berwick is subject to the mandates of Title III of the ADA, 42 U.S.C. § 12181(7)(A-F).

66. Based on the foregoing, Berwick excluded Plaintiff from its program on the basis of her disability. Its basis for expelling Plaintiff—a single, non-threatening communication sent by Plaintiff to a peer who had been harassing her—was pretextual.

67. Plaintiff is entitled to relief under Title III of the ADA, including injunctive relief to reverse her expulsion and remove it from her permanent educational record.

## COUNT II
**(Maine Human Rights Act,
5 M.R.S.A. § 4553-A)**

68. Plaintiff repeats the allegations contained in paragraphs 1 through 67.

69. Plaintiff is a person with a disability within the meaning of Maine Human Rights Act due to her diagnosis with Major Depressive Disorder, which affected one or more of her major life activities.

70. In addition, Berwick regarded Plaintiff as having a disability following her psychiatric hospitalization in 2012.

71. Plaintiff was otherwise qualified to attend high school at Berwick Academy, having successfully completed each grade there since kindergarten. Until the events giving rise to this action, Plaintiff had no disciplinary violations and was generally regarded as an excellent student and cooperative school citizen.

72. Berwick operates a place of public accommodation. As a private school offering elementary and secondary educational services, Berwick is subject to the mandates of the Maine Human Rights Act.

73. Based on the foregoing, Berwick excluded Plaintiff from its program on the basis of her disability in violation of the Maine Human Rights Act. Its basis for expelling Plaintiff—a single, non-threatening communication sent by Plaintiff to a peer who had been harassing her—was pretextual.

74. Plaintiff is entitled to relief under the Maine Human Rights Act, including injunctive relief to reverse her expulsion and remove it from her permanent educational record and an award of civil penal damages.

## COUNT III
### (Breach of Contract)

75. Plaintiff repeats the allegations contained in paragraphs 1 through 74.

76. By virtue of her enrollment agreement with Berwick, Plaintiff was entitled to rely on the protections provided by Berwick's published policies and procedures.

77. In addition, Berwick promised, as part of her disciplinary proceedings in June 2013, not to have the Honor Committee consider the issue of the January post that already had been resolved.

78. By virtue of the foregoing, Berwick's actions in expelling Plaintiff through the Honor Committee process for her non-threatening message to Classmate breached its contract with her and amounted to an arbitrary or capricious dismissal, marked by an abuse of discretion in enforcing its policies and procedures.

79. As a proximate result of this breach of contract, Plaintiff suffered injuries for which she is entitled to recover damages.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor against Berwick Academy, to include (a) declaratory relief that her expulsion violated the ADA and the MHRA, and amounted to a breach of contract; (b) injunctive relief in the form of a reversal of her expulsion and correction of her educational records; (c) compensatory and civil penal damages, as are reasonable in the premises; (d) recovery of her costs of suit, including reimbursement of her attorney's fees and litigation expenses under the ADA and/or the MHRA; and (e) such further relief as the Court may deem just and proper.

Dated:  February 19, 2016.	Respectfully submitted,

*/s/ Richard L. O'Meara*
Richard L. O'Meara
*E-mail:  romeara@mpmlaw.com*

MURRAY, PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, ME  04104-5085
(207) 773-5651

Counsel for Plaintiff Persephone Bennett